SHARP MICROELECTRONICS
TECHNOLOGY, INC.,
Plaintiff,

v.

UNITED STATES, Defendant.

Slip Op. 96–104.
Court No. 93–09–00536.

United States Court of
International Trade.

July 1, 1996.

Donovan Leisure Newton & Irvine, New York City, (Peter J. Gartland, Christopher P. Johnson, David B. Pitofsky, David S. Versfelt, and Fusae Nara), for plaintiff.

Frank W. Hunger, Assistant Attorney General, Washington, DC, Joseph I. Liebman, Attorney–in–Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Amy M. Rubin); United States Customs Service (Chi S. Choy), of counsel, New York City, for defendant.

## MEMORANDUM AND ORDER

WALLACH, Judge:

### I

### INTRODUCTION

Plaintiff, Sharp Microelectronics Technology, Inc. ("Sharp"), challenges the classification of imported glass cells consisting of two pieces of processed glass with a layer of liquid crystal material injected between them ("display glass") by the United States Customs Service ("Customs"). Customs classified the merchandise as "[l]iquid crystal devices not constituting articles provided for more specifically in other headings ... Other devices ... Other" under the Harmonized Tariff Schedule of the United States ("HTSUS") subheading 9013.80.60 and assessed duty at a rate of 9 percent *ad valorem*. The entries at issue in this action were imported through the port of Portland, Oregon from November, 1991 through March, 1993.

Sharp asserts that the display glass is properly classified under either HTSUS subheading 8471.92.30, as "Automatic data processing machines and units thereof; Input or output units ... Display unit", duty rate is free, or, in the alternative, HTSUS subheading 8473.30.40 as "Parts and accessories of machines of Heading 8471 ... Not incorporating a cathode ray tube", duty rate is free.

Sharp has submitted a motion for partial summary judgment.[1] Defendant has submitted a cross motion for summary judgment to uphold Customs' classification and dismiss this action.

This Court exercises its jurisdiction pursuant to 28 U.S.C. § 1581(a) (1994).

### II

### STATEMENT OF FACTS

The imported merchandise at issue is referred to as "display glass".[2] The display glass displays text and graphics as the result of coded signals received from the central processing unit of an automatic data processing ("ADP") machine. Stip. 31–32. As imported, the display glass does not have stand-alone capacity to function as a display of an ADP machine, Stip. 3, and it does not store, process or accept data. Stip. 4.

The display glass consists of two rectangular shaped, ultra flat glass substrates, approximately 1.1 millimeters in thickness. Stip. 8. The inner surfaces of the glass substrates have been coated with indium tin oxide transparent electrodes and etched, creating 640 columns and, depending on the model, either 480 or 400 rows. Stip. 9. The interior of each glass substrate is covered with a processed alignment layer causing the liquid crystal molecules to align in a fixed direction. Stip. 12.

When the glass substrates are joined, the electrodes are perpendicular to each other, creating a matrix. Stip. 14. The interior space between the glass substrates is filled with liquid crystals, and the glass substrates are hermetically sealed together. Stip. 15. An electric field can be applied across the liquid crystals to form picture elements, known as a pixels. Stip. 16.

Display glass operates through polarization of light, and liquid crystals are a means to alter that polarization. Stip. 22. Through selective application of voltage, pixels may be made to appear light or dark. Stip. 23–26. Through a combination of light and dark pixels, visible images of text and graphics can be created that are visible from the front of the display glass. Stip. 27.

Large-scale integrated flexible circuits are attached to the display glass at the indium tin oxide electrodes which protrude from top, bottom and left edges of the display glass. Supp.Stip. 5. Two printed wiring boards

---

1. In its Complaint, Sharp submitted a second alternative claim, subheading 8531.20.00, duty rate of 2.7 percent *ad valorem*, but did not move for summary judgment on this claim. Since the Court has granted Defendant's Motion For Summary Judgment, that claim is rendered moot.

2. The parties have stipulated to a statement of uncontested facts ("Stip."), attached to Plaintiff's Motion for Summary Judgment, as Exhibit A. In addition, the parties also stipulated to a supplemental statement of uncontested facts ("Supp. Stip."), submitted with Defendant's Supplemental Memorandum, dated June 12, 1996.

incorporating segment driver electronics are attached to the large-scale integrated flexible circuits attached to the top and bottom of the display glass. Supp.Stip. 6. A third printed wiring board incorporating common driver electronics is attached to the large-scale integrated flexible circuits at the left of the display glass. Supp.Stip. 7. Both ends of the printed wiring board incorporating common driver electronics are connected to the printed wiring boards with segment drivers. Supp.Stip. 8.

The display glass is connected to an ADP machine by means of a fifteen-pin connector mounted on the printed wiring board at the left of the display glass together with the common driver electronics. Supp.Stip. 10. The segment and common driver electronics receive signals from the CPU through the graphic chip. Supp.Stip. 11.

Both the CPU and the graphic chip are mounted on the main processor board of the ADP, and are connected to each other by means of 16-bit bus. Supp.Stip. 12. The digital command signals received from CPU is processed by the graphic chip, which executes the commands and "writes" the displayable image into dynamic memory. Supp. Stip. 13. The signals are then transferred from the dynamic memory to the driver electronics by the graphic chip and are displayed as text and graphics on the display glass. Supp.Stip. 14.

## III

### DISCUSSION

#### A

**Summary Judgment May Be Granted When There Are No Genuine Issues Of Material Fact In Dispute And The Moving Party Is Entitled To Summary Judgment As A Matter Of Law**

Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT Rule 56(d). The Court may grant summary judgment only if the Court finds that no genuine issues of material fact exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1988). No genuine issues of material fact exist here, and summary judgment may be granted as a matter of law.

#### B

**Customs Properly Classified The Imported Merchandise Under HTSUS 9013.80.60**

#### 1

**Customs Is Not Entitled To A Presumption Of Correctness In A Summary Judgment Motion Where There Are No Material Facts In Dispute**

██ The presumption of correctness which is statutorily mandated in 28 U.S.C. § 2639 is not relevant when there is no factual dispute between the parties. *Anval Nyby Powder AB v. United States*, 20 CIT ——, 927 F.Supp. 463, 468–69 (1996) (citing *Goodman Mfg., L.P. v. United States*, 69 F.3d 505, 508 (Fed.Cir.1995)). Therefore, Defendant is not entitled to a presumption of correctness in this summary judgment action.[3] Instead, the Court must "reach the correct decision" as prescribed in 28 U.S.C. § 2643. *See Jarvis Clark Co. v. United States*, 2 Fed.Cir. (T) 70, 75, 733 F.2d 873, 878 (1984) (The "Court's duty is to find the *correct* result, by whatever procedure is best suited to the case at hand."). As will be discussed below, the Court finds that Defendant has established that Customs' classification of the imported merchandise is correct.

#### 2

**Heading 9013, HTSUS, More Specifically Describes The Subject Merchandise Than Heading 8471 or Heading 8473**

Customs classified the display glass at issue under HTSUS 9013.80.60 which reads, in part:

---

**3.** Defendant cited *Marubeni America Corp. v. United States*, 20 CIT ——, 915 F.Supp. 413, 418–19 (1996), in footnote 2 of its Reply for the proposition that the Government's legal interpretation of the scope of a tariff provision is entitled to deference. *Marubeni* held only that the importer's interpretation of a tariff provision was not entitled to deference. *Id.* at 419.

9013 Liquid crystal devices not constituting articles provided for more specifically in other headings; lasers, other than laser diodes; other optical appliances and instruments, not specified or included elsewhere in this chapter; parts and accessories thereof:

.80 Other devices, appliances and instruments:

.60 Other.

■ General Rule of Interpretation ("GRI") 1 of the HTSUS states that "... for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes." As an aid to determining the meaning of a particular tariff term, the Court may look to the *Explanatory Notes* which, although not legally binding on the Court, generally are indicative of the proper interpretation of the HTSUS. *Pima Western, Inc. v. United States*, 915 F.Supp. 399, 400–01 (CIT 1996). The *Explanatory Notes* were published by the Customs Cooperation Council ("CCC") which was established in 1950 and was responsible for drafting a system to handle commodity descriptions and coding for the trading nations of the world. *Interim Report on the Harmonized Commodity Description and Coding System*, USITC Pub. No. 1106 at 3–8, 12 (1980).

When Congress adopted the Harmonized Commodity Description and Coding System under the International Convention as the Harmonized Tariff System of the United States (HTSUS) through the enactment of the Omnibus Trade and Competitiveness Act of 1988, *see* Pub.L. 100–418, sec. 1201 & 1204, 102 Stat. 1107, 1147–48 (1988), Congress did not comment on the scope of Heading 9013. Prior to the adoption of the Convention by Congress, however, documents were prepared by the Nomenclature Committee and the Harmonized System Committee of the CCC. These documents chronicle the work of the committees as they developed the Harmonized System and may provide insight.

The earliest drafts of Heading 9013 did **not** contain the term "liquid crystal device." In 1979, the discussion of liquid crystal displays originated with a concern over how to classify liquid crystal displays used with electronic clocks and watches, which, as electro-optical devices, were potentially classifiable in both Chapter 85 and Chapter 90. The Committee contemplated whether liquid crystal displays should be classified as finished articles or as devices of indeterminate or general use. The Committee thought that while it seemed "desirable to classify these devices as far as possible in a single heading," *Reports to the Customs Cooperation Council on the 43rd Session of the Nomenclature Committee*, Doc. No. 25.466 E (Aug. 14, 1979) ("Reports to the CCC"), Exhibit A to Plaintiff's Supplemental Memorandum of June 12, 1996, at ¶ 12 (P's Supp. 6/12/96), it might be "advisable to *leave the finished articles in their appropriate headings* ... The same applies to parts identifiable as being specially designed for a specific machine or apparatus." *Id.* (emphasis in original).

Subsequently, the Committee concluded that "finished articles using the properties of liquid crystals which were covered by a specific heading should be classified in that heading...." *Reports to the CCC*, Annex F/11 to Doc. 25.700 E (NC/43/Oct. 79) at ¶ 2 (Exhibit B to P's Supp. 6/12/96).

Thus, the Committee sought to create a provision that would place liquid crystal devices in one place, but would not include articles covered by a more specific heading. As a result, liquid crystal devices were separated into two categories: 1) finished articles incorporating liquid crystal properties and covered by a specific heading (the heading of the finished article such as a thermometer which uses liquid crystal properties to indicate temperature) and 2) indeterminate or general use liquid crystal devices to be classified under heading 9013. *See id.* In making this decision, the Committee stated that "[i]t was decided that **finished articles,** other than those for indeterminate or general use, incorporating liquid crystals should fall in their respective headings **insofar as they were covered by a specific heading....**" *Reports to the CCC*, Doc. 26.640 E (HC/24/Oct. 80) (Exhibit K to D's Supp. 6/12/96) (emphasis added).

■ The *Explanatory Note* to Heading 9013 was amended to reflect the Committee's consideration of liquid crystal devices and to define liquid crystal devices in language that is almost identical to that which exists today.[4] The current *Explanatory Note* states that: "Liquid crystal devices consisting of a liquid crystal layer sandwiched between two sheets or plates of glass or plastics, whether or not fitted with electrical connections, presented in the piece or cut to special shapes and not constituting articles described more specifically in other headings ..." are included in Heading 9013. *Explanatory Notes,* 90.13(1) p. 1478. The display glass fits this description of liquid crystal devices. The display glass consists of two ultra flat glass substrates, Stip. 8, and the interior of each glass substrate is covered with a processed alignment layer causing the liquid crystal molecules to align in a fixed direction. Stip. 12. Further, the classification of the display glass as a liquid crystal device of Heading 9013 is in accordance with the Committee's discussion on liquid crystal devices because the display glass is not a "finished article" which is covered by a "specific heading". Although the *Explanatory Note* to Chapter 90 indicates that the term "liquid crystal devices" encompasses the display glass, the Court must continue its GRI 1 analysis to determine the correct classification.

Here, the specific phrase of Heading 9013 which may apply to the display glass is "[l]iquid crystal devices not constituting articles provided for more specifically in other headings". This phrase requires the Court to perform an analysis of the other headings in the HTSUS in order to determine whether there is a heading that more specifically describes the display glass (the liquid crystal device) than Heading 9013.

Plaintiff proposes the display glass is properly classified under either HTSUS subheading 8471.92.30, as "*Automatic data processing machines and units thereof; Input or output units ... Display unit*", or, in the alternative,

HTSUS subheading 8473.30.40 as "Parts and accessories of machines of Heading 8471 ... Not incorporating a cathode ray tube". As discussed below, the Court rejects both of Plaintiff's suggested headings and finds that Heading 9013 provides the most specific description of the subject merchandise.

a

**The Merchandise Does Not Possess The Essential Character Of An Output Unit For An ADP Machine And Therefore May Not Be Classified Under HTSUS 8471**

The Court rejects Plaintiff's claims that the display glass is properly classifiable under HTSUS 8471.92.30, which provides for, in part:

8471 Automatic data processing machines and units thereof; ...

.92 Input or output units, whether or not entered with the rest of the system and whether or not containing storage units in the same housing:

Display units:

.30 Without cathode-ray tube (CRT), having a visual display diagonal not exceeding 30.5 cm.

Plaintiff argues that its merchandise falls under subheading 8471.92.30 for three reasons: (1) the imported merchandise is an "output unit" as that term is used in subheading 8471.92; (2) the imported merchandise meets the definition of "unit" in Note 5(B) to Chapter 84; and (3) the imported merchandise has the "essential character" of the display of an ADP machine when viewed according to GRI Rule 2(a). Plaintiff's Motion For Summary Judgment at 21 (hereinafter "PMSJ"). The Court rejects each argument, as discussed below.

i

**The Display Glass Does Not Meet The Definition Of "Output Unit" As Used In HTSUS 8471.92**

Plaintiff submits that "output unit" is defined as "[a] device in a data processing

---

4. Liquid crystal devices consisting of a liquid crystal layer sandwiched between two sheets or plates of glass or plastic material, whether or not fitted with electrical connections, imported in the piece or cut to special shapes and not constituting articles described more specifically in other headings. *Reports to the Customs Cooperation Council on the 44th Session of the Nomenclature Committee Reports to the CCC,* Annexes L/26 and E/18 to Doc. 26.300 E (NC/44/Apr. 80); Exhibit C to P's Supp. 6/12/96.

system by which data can be received from the system. Synonymous with output device." PMSJ at 22 (quoting *IBM Dictionary of Computing*, p. 487 (10th ed. 1993)). Further, Plaintiff defines "output device" as "[a] unit used for taking out data values from a computer and presenting them in the desired form to the user, such as a printer or display screen." PMSJ at 22 (emphasis omitted) (quoting *Webster's New World Dictionary of Computing Terms*, p. 419 (5th ed. 1994)).

Plaintiff argues that the display glass meets the definitions above, thus falling within the common meaning of the term "output unit". "[T]he display glass functions as the screen on which text and graphics are presented so that the user of a laptop or notebook ADP machine can obtain the information from the ADP machine." PMSJ at 22–23.

The Court finds, however, that the display glass does not come within the meaning of the term "output unit" because in its condition as imported, the display glass cannot receive data. The ability to receive data is given to an output unit by other components (including, *inter alia*, flexible circuits, the large-scale integrated circuits, the wiring boards, and graphics chip) which the display glass does not have attached to it. *See, supra*, pages 3–4 (statement of facts).

### ii

### The Merchandise Is Not A "Unit" As Described In Note 5(B) To Chapter 84

Plaintiff also argues that the display glass is a "unit" as described in Note 5(B) to Chapter 84 which provides that:

(B) Automatic data processing machines may be in the form of systems consisting of a variable number of separately housed units. A unit is to be regarded as being a part of the complete system if it meets all of the following conditions:

(a) It is connectable to the central processing unit either directly or through one or more other units; and

(b) It is specifically designed as part of such a system (it must, in particular, unless it is a power supply unit, be able to accept or deliver data in a form (code

or signals) which can be used by the system). Such systems entered separately are also to be classified in heading 8471.

Plaintiff submits that the display glass meets the requirements of subsection (a) because the display glass is connectable to the central processing unit of an ADP machine through integrated circuits on flexible circuits, wiring boards and a graphic chip. PMSJ at 24. Further, the display glass is connected to the central processing unit of an ADP machine at the contact points that protrude from three edges of the glass. The contact points allow the indium tin oxide electrodes of the display glass to receive positive and negative voltages from the CPU of the ADP machine. Plaintiff's Reply Memorandum at 8 ("P's Reply") (citing Stip. 31). Because the display glass is designed as part of an ADP system and can accept data in a form used by the system, Plaintiff claims it meets the requirements of subsection (b) of Note 5(B) to Chapter 84.

The fact, however, that the display glass by itself is not a unit which may be directly connected to the central processing unit (CPU) precludes the display glass from meeting the requirements of Note 5(B). *See, supra*, pages 3–4 (statement of facts). The display glass must be assembled with the flexible circuits, the large-scale integrated circuits, the wiring boards, and graphics chip before it may be connected to the CPU. Further, the Court finds valid Defendant's contention that these components are not "units" within the meaning of Note 5(B) because a "unit" is "an assembly or device capable of independent operation, such as a radio receiver, cathode-ray oscilloscope, or computer subassembly that performs some inclusive operation or function". Defendant's Cross Motion For Summary Judgment at 19 ("DCMSJ") (quoting *McGraw–Hill Dictionary of Scientific and Technical Terms*, p. 1705 (3rd Ed.)).

### iii

### The Merchandise Does Not Possess The Essential Character Of An Output Unit Of An Automatic Data Processing (ADP) Machine

Plaintiff also argues that the display glass has the essential character of an output unit

of an ADP machine. GRI 2(a) states, in part: "[a]ny reference in a heading to an article shall be taken to include a reference to that article incomplete or unfinished, provided that, as entered, the incomplete or unfinished article has the essential character of the complete or finished article." First, Plaintiff submits that "the display glass is what leaps to mind when reference is made to an output unit of a laptop or notebook sized ADP machine." PMSJ at 25. In addition, according to Plaintiff, "performance characteristics enumerated in Section D of the Statement of the Material Facts *are embedded in the display glass,* and these performance characteristics constitute the essential characteristics of an output unit for an ADP machine." PMSJ at 25. Plaintiff further says, the display glass possesses all the typical characteristics of a display unit for a laptop or notebook ADP machine (pixel configuration, dot pitch, thin profile, light weight, liquid crystal material mix, and low power consumption). PMSJ at 26 (citing HQ 952973 (Aug. 5, 1993)); *see also* HQ 952502 (Mar. 18, 1993); HQ 951868 (Oct. 31, 1992).

■ "[A]n article need not have standalone capability in order to be classified under an *eo nomine* provision that describes it." *Nidec Corp. v. United States,* 18 CIT 821, ——, 861 F.Supp. 136, 141 (1994) (citing *National Advanced Systems v. United States,* 26 F.3d 1107, 1110–11 (Fed.Cir.1994)). However, the Court finds that because the display glass lacks "the bezel, the cable connector, the LSI (Large Scale Integrated chips), the diffuser, the rubber spacer, the light pipe, the reflector, the plastic chassis, the lamp, the lampholder, the connector, and the connection wire", HQ 951868 at 4, the display glass does not impart the essential character of a finished ADP output display. The *Explanatory Notes* to Chapter 84 state that: "Automatic data processing machines are machines which, by logically interrelated operations performed in accordance with preestablished instructions (program), furnish data which can be used as such or, in some cases, serve in turn as data for other data processing operations ...". *Explanatory Notes* 84.71(I) p. 1297. Thus, it is the ability to process data that gives the essential character to articles under Heading 8471.

The Court, therefore, finds that the display glass may not be properly classified under Heading 8471. A comparison between Heading 9013 and Heading 8471 is therefore unnecessary.

**b**

**The Merchandise Is Classifiable As A Part Of An ADP Machine Under HTSUS 8473 Because It Constitutes An Integral Element Of The Output Unit Of An ADP Machine**

Plaintiff's alternative classification for the display glass is HTSUS 8473.30.40, which reads:

8473 Parts and accessories ... suitable for use solely or principally with machines of headings 8469 to 8472:

.30 Parts and accessories of machines of heading 8471 [automatic data processing machines and units thereof]:

.40 Not incorporating a cathode ray tube.

The term "part" is defined as "an essential portion or integral element of something." PMSJ at 28 (citing *Websters Third New International Dictionary, Unabridged,* p. 1645 (1981)). This Court has stated that in order to prevail on its claim that something is a part, "plaintiff's burden consists of demonstrating that the [article claimed to be a part] is an integral component of the [finished article], without which the [finished article] could not operate in its intended capacity." *Technicolor Videocassette, Inc. v. U.S.,* 18 CIT 181, ——, 846 F.Supp. 1005, 1008 (1994), *vacated on other grounds,* 47 F.3d 1183 (Fed. Cir.1995). Plaintiff argues that "the display glass is an essential portion or integral element of the output unit of a laptop or notebook ADP machine, and without the display glass the output unit cannot operate." According to Plaintiff, then, the display glass is part of an ADP machine under Heading 8473. PMSJ at 28–29.

The Court agrees with Plaintiff's assertion that Heading 8473 is a use provision. *See* PMSJ at 29. When classification in a heading is controlled by "use (other than actual use)", it is subject to Rule 1(a) of the Addi-

tional U.S. Rules of Interpretation, which provides: (a) a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of goods of that class or kind to which the imported goods belong, and the controlling use is the principal use. In order for the display glass to be classifiable under Heading 8473, the display glass must be solely or principally for use in an ADP machine.

Plaintiff submits that the display glass belongs to the class or kind of goods known as "high information content monochromatic liquid crystal display glass", in that it has over 120,000 pixels, a visible display diagonal not exceeding 30.5 centimeters and the capability of displaying text and graphics as the result of being connected to the central processing unit of an ADP machine. At, or immediately prior to, the date of importation of the display glass subject to this action, this kind or class or merchandise was used primarily as part of laptop or notebook ADP machines. PMSJ at 30, Stip. 1. The Court finds that Plaintiff has met its burden under the "use" provision and that the display glass may be properly classified as a part of an ADP machine classifiable under Heading 8473.

Defendant concedes that the display glass can be described as a part of an ADP machine. DCMSJ at 22. However, Defendant argues that Chapter Note 1(m) to Section XVI prohibits the display glass from being classified in Heading 8473 and, in the alternative, that Heading 9013 provides the more specific provision for the display glass. For the reasons that follow, the Court agrees with both of Defendant's contentions.

c

### Note 1(m) To Section XVI Prohibits Classification Of The Display Glass Under Heading 8473

Note 1(m) of Section XVI provides, in part, that "[t]his section [which includes chapter 84] does not cover: Articles of Chapter 90." As stated above, GRI 1 mandates the examination of any relative section or chapter notes in determining classification. Indeed, the *Explanatory Notes* to GRI 1 state that

"the terms of the headings and any relative Section or Chapter Notes are paramount, i.e., they are the first consideration in determining classification." *Explanatory Notes*, GRI 1(V). Therefore, Note 1(m) to Section XVI is controlling under GRI 1.

Plaintiff argues that Heading 9013 does not encompass the display glass because Heading 9013 provides for classification in the more specific heading, thus classifying the good elsewhere. "Because the subject display glass is not an 'Article of Chapter 90' it does not fall within the scope of Note 1(m), and is properly classifiable under Section XVI." P's Reply at 5. In other words, Heading 9013, by its own terms, applies only when there is not a more specific provision. Because there is a more specific provision, according to Plaintiff, Heading 9013 is inapplicable, making Note 1(m) irrelevant. P's Reply 5–6.

Defendant submits, on the other hand, that "if an article can be classified in Chapter 90, HTSUS, it can **not** be classified in the chapters of Section XVI, HTSUS." Defendant's Reply To Plaintiff's Brief at 3–4 (D's Reply). Defendant submits that the purpose of this note was to cover cases when an article possesses characteristics which render it potentially classifiable under both Chapter 90 and a chapter of Section XVI, resulting in the classification of the good in Chapter 90. D's Reply at 4.

The issue in this case, then, is similar to the question "which came first, the chicken or the egg?" In other words, which comes first, the determination that the subject merchandise may be classified under Heading 9013, then an examination of the other headings of the HTSUS to determine if there is a more specific provision for the subject merchandise, in which case if the alternative classification is within Section XVI Note 1(m) to that section directs classification under Heading 9013? Or, does the initial reading of Heading 9013 immediately send the reader to the other provisions of the HTSUS to determine if another provision more specifically describes the subject merchandise than Heading 9013, in which case Note 1(m) to Section XVI would be irrelevant?

The Court finds that classification in Chapter 90 comes before an examination of other HTSUS provisions which may more specifically provide for the liquid crystal devices. In order for Heading 9013 to apply, it first must be determined that the display glass could fit within the description for "liquid crystal devices". Obviously, if the display glass did not meet the definition of liquid crystal devices, the Court's inquiry into Heading 9013 would end. However, as shown above, the display glass does meet the description of liquid crystal devices found in the *Explanatory Notes*, and as a result, the Court must continue to examine the provisions of 9013. Next, it must be determined whether there is another heading in the HTSUS in which the liquid crystal devices constitute articles provided for more specifically than under Heading 9013.

As discussed above, both parties and the Court agree that Heading 8473 also provides for the display glass as a part of an ADP machine. However, Heading 8473 falls within Section XVI which contains Chapter Note 1(m) excluding articles of Chapter 90 from classification within Section XVI. Therefore, the display glass, as an article of Chapter 90, must be classified under Heading 9013.[5]

Even if the Court were to put the chicken before the egg, it would still conclude that Heading 9013 provides more specifically for the subject merchandise than Heading 8473. When determining relative specificity, the Court looks at the provision with "requirements which are more difficult to satisfy and which describe the article with the greatest

degree of accuracy and certainty." *Amersham Corp. v. United States*, 5 CIT 49, 66, 564 F.Supp. 813, 824 (1983).[6] As added guidance, additional U.S. Rule of Interpretation 1(c) provides that "a provision for 'parts and accessories' shall not prevail over a specific provision for such part or accessory." The Court finds that Heading 9013 contains a specific provision for liquid crystal devices and thus is more specific than the part provision under Heading 8473.

Here, Heading 9013 provides the most specific description of the subject merchandise and has requirements which are more difficult to satisfy, as illustrated above by the discussion of the *Explanatory Note* defining the liquid crystal devices and how the display glass meets that definition.

By contrast, Heading 8473 only requires that the merchandise is solely or principally used as a part or accessory. For example, parts of typewriters and word processing machines (Heading 8469), parts of calculating machines, accounting machines, postage-franking machines, ticket-issuing machines and similar machines, incorporating a calculating device, and cash registers (Heading 8470), other parts of computers (Heading 8471), and parts of other office machines (Heading 8472), all may be classified under Heading 8473. Thus, it is easier to be classified as a part or accessory of any of the machines enumerated above than it is to be a liquid crystal device. Heading 9013, therefore, provides more specifically for the subject merchandise than Heading 8473.[7]

---

5. The Court rejects Plaintiff's argument that Note 2(a) to Chapter 90 mandates classification under Heading 8473. Note 2(a) provides that "... parts and accessories for machines, apparatus, instruments or articles of [Chapter 90] are to be classified according to the following rules: (a) Parts and accessories which are goods included in any of the headings of this chapter or of chapter 84, 85, or 91 ... are in all cases to be classified in their respective headings." Note 2(a) does not apply to the display glass because Note 2 does not apply. The display glass is itself an article of chapter 90, as a liquid crystal device. The display glass is not a part or accessory for the liquid crystal devices encompassed in Heading 9013 and therefore Note 2(a) is inapplicable.

6. The Court notes in passing that a relative specificity analysis under GRI 3(a) *is inappropriate*

because classification may be determined in the case under GRI 1. As stated in the *Explanatory Note* to GRI 3, this "Rule can only take effect **provided the terms of headings or Section or Chapter Notes do not otherwise require.**" *Explanatory Notes*, GRI 3(II) (emphasis in original). As it is the terms of Heading 9013 which require the specificity analysis in this case, GRI 3(a) does not apply.

7. Plaintiff argued at length in its Motion that Heading 9013 was a "basket provision", P's Motion at 17–19, and that a provision for parts prevails over a basket provision. PMSJ at 33–36 (citing *United States v. Porter*, 68 C.C.P.A. 15, 645 F.2d 52 (1981)). The Court finds, however, that even if Heading 9013 is a "basket provision" for liquid crystal devices, it still more specifically describes the display glass than the provision for

## IV

### CONCLUSION

For the foregoing reasons, the Court denies Plaintiff Sharp Microelectronics Technology, Inc.'s motion for partial summary judgment, grants Defendant United States' motion for summary judgment, and enters final judgment in favor of the United States.

### JUDGMENT

ORDERED, ADJUDGED and DE-CREED that Plaintiff's motion for partial summary judgment be, and hereby is, denied; and it is further

ORDERED, ADJUDGED AND DE-CREED that Defendant's motion for summary judgment be, and hereby is, granted; and it is further

ORDERED, ADJUDGED and DE-CREED that the classification of the subject display glass by the United States Customs Service under HTSUS 9013.80.60 is affirmed; and it is further

ORDERED, ADJUDGED and DE-CREED that each party shall bear its own costs.

parts in Heading 8473. As stated previously, Additional U.S. Rule of Interpretation 1(c) provides that a specific provision for a part prevails over a provision for 'parts'. Because Heading 9013 contains a specific provision for liquid crystal devices, and because the display glass is a liquid crystal device, Heading 9013 prevails over the provision for "parts" found under Heading 8473.