**FOXFIRE INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

Slip Op. 96–166.

Court No. 93–09–00537.

United States Court of
International Trade.

Oct. 8, 1996.

James W. Larson, Rainier, WA, for Plaintiff.

Frank W. Hunger, Assistant Attorney General; Joseph I. Liebman, Attorney in Charge, International Trade Field Office; Amy Rubin, Civil Division, Dept. of Justice, Commercial Litigation Branch; Sheryl A. French, Office of Assistant Chief Counsel, U.S. Customs Service, of counsel, for Defendant.

## OPINION

POGUE, Judge:

This case is before the court after trial *de novo*. Plaintiff, Foxfire Inc., challenges the decision of the United States Customs Service ("Customs") denying plaintiff's protest against Customs' liquidation of the subject merchandise. The court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (1988).

Plaintiff imports certain outerware garments from Australia. Upon importation, Customs classified the garments under sub-

headings 6202.12.2010, HTSUS (other women's raincoats);[1] 6202.92.2061, HTSUS (other women's cotton anoraks (jackets), other than water resistant);[2] and 6211.32.0070, HTSUS (men's cotton vests).[3] Plaintiff claims that the merchandise should have been classified under various subheadings of 6210, HTSUS.[4] Heading 6210 encompasses, *inter alia*, garments made of fabrics classified under heading 5907. Heading 5907, in turn, provides for "textile fabrics impregnated, coated or covered." Note 5(a) to Chapter 59, HTSUS, limits 5907's coverage by excluding fabrics in which the coating cannot be seen with the naked eye. This restriction has an additional caveat that no account may be taken of any resulting change in color when measuring visibility to the naked eye.

The *Explanatory Notes* for Heading 5907, HTSUS, describe fabrics *excluded* by Note 5 as those "in which the impregnation, coating or covering cannot be seen.... Examples of these ... are those [fabrics] impregnated with size, starch or similar dressings ... or with substances designed solely to render them crease-proof, moth-proof, unshrinkable or waterproof (e.g., waterproof gabardines or poplins)." The *Explanatory Notes* for Heading 6210, HTSUS, state that the heading includes oilskins.[5] Additionally, Note 5 to Chapter 62, HTSUS creates a preference for classifying goods under heading 6210 by stating that "garments which are *prima facie* classifiable both under heading 6210 and under other headings of this chapter, excluding heading 6209, are to be classified under heading 6210."

The dispute at trial centered on whether the impregnation, coating or covering on plaintiff's garments was visible to the naked eye.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

The garments at issue are marketed in the United States as oilskins. They are made of a cotton fabric treated with petrolatum,[6] which waterproofs the merchandise. The treatment compound also gives the garments a rugged, durable look. At trial, plaintiff offered samples of treated and untreated fabric into evidence as plaintiff's exhibits 1 (treated) and 3 (untreated). The treated fabric possessed a sheen not apparent on the untreated fabric. Relative to the untreated sample, the treated sample and the representative heavyweight duster coat[7] looked waxy, wetter, heavier, and, to a certain degree, darker.

George Barth, National Import Specialist and witness for the defense, explained Customs' approach for determining whether a coating, covering or impregnation is visible to the naked eye under Note 5 to Chapter 59, HTSUS. He produced examples of fabrics considered by Customs to be coated, covered or impregnated under Heading 5907.

In explaining Customs' approach, Mr. Barth stated that a customs official will examine the item to see if the coating in question is obvious (always careful to exclude color as a basis for the analysis). If the coating is not readily apparent, but the fabric looks as though it has *something* on it, Customs typically will undertake a closer examination of the fabric. The Customs inspector will check to see whether the fabric's interstices have been filled and whether the fab-

---

1. 9.5% *ad valorem*.

2. 9.5% *ad valorem*.

3. 8.6% *ad valorem*.

4. At issue are three basic garment types: raincoats, anoraks and vests. Under plaintiff's claimed classifications, the garments would be classified respectively under 6210.30.2020 with a duty of 6.6% *ad valorem*, 6210.50.5020 with a duty of 7.6% *ad valorem*, and 6210.50.5055 with a duty of 7.6% *ad valorem*, HTSUS.

5. The *Explanatory Notes* are the official interpretation of the Harmonized Commodity Descrip-

tion and Coding System which served as the basis of the HTSUS. While the *Explanatory Notes* "do not constitute controlling legislative history," they "provide a commentary on the scope of each heading of the Harmonized System and are thus useful in ascertaining the classification of merchandise under the system." H.R.Conf.Rep. No. 576, 100th Cong., 2d Sess. 549 (1988) U.S.C.C.A.N. 1547, 1582. *See also Pima Western, Inc. v. United States*, 915 F.Supp. 399, 402 (1996).

6. A combination of mineral or Parafin wax and mineral oil.

7. Admitted into evidence as joint exhibit 1.

ric's fiber or weave has been blurred or obscured. The inspector will also consider whether the surface of the fabric has been smoothed or leveled. At the same time, the inspector will take account of any difference in reflectivity. The inspector may go so far as to examine the merchandise under low power magnification [8] to confirm that the interstices are indeed filled, that the thread or weave is in fact blurred or obscured, or that the surface is definitely leveled or smoothed.

Mr. Barth produced several examples of fabrics considered by Customs to be coated, covered or impregnated. Exhibits Q and R were two such examples. Exhibit Q was a piece of fabric that was coated on one side. The coated side exhibited a glossy sheen; it also appeared that the surface of the fabric had been leveled by the coating. Upon closer examination, under low power magnification, Mr. Barth confirmed that the surface was in fact leveled, and he said that Customs had concluded that the covering on Q was visible to the naked eye.

Exhibit R was also a piece of fabric coated on one side that exhibited a glossy sheen. Mr. Barth held the exhibit in his hand and separated a clear covering from the fabric. Once separated, the covering was plainly visible. The Court could not see the clear plastic covering on exhibit R until it was separated from the fabric.

On cross examination, Mr. Barth was asked to scrape the treated fabric in issue with a blade: The result: a waxy, Vaseline-like substance—the petrolatum treatment—was visible on the blade.

Based on the approach followed by Customs to evaluate Exhibits Q and R, and Mr. Barth's treatment of the fabric in issue on cross examination, the Court can discern no difference between Exhibits Q and R a. d the fabric in issue. As an example, Customs

concluded that exhibit R was coated after manually separating the covering from the fabric. Similarly, the impregnation on plaintiff's oilskin garments was visible when separated from the fabric. The Court, however, does not believe that the approach used to classify exhibits R or Q,[9] is appropriate for the subject oilskins.

First, as a practical matter, the subject fabric is impregnated, not coated.[10] Exhibits Q and R were only covered on one side, whereas the impregnated oilskins are saturated throughout.

More important from a legal standpoint, the approach used by Customs to classify samples Q and R strikes the Court as an "effects test." In other words, in examining Q and R, Customs looked for filling of the fabric's interstices, smoothing of the fabric's texture, and covering of the fabric's fibers or weave. These are all *effects* of the coating or impregnation on the fabric; they are not visible attributes of the coating or impregnation itself. Even though apparently contrary to Customs' current practice, defendant argued in its pretrial brief that the effects test utilized under the TSUS [11] may no longer appropriate under the HTSUS because of a change in statutory language. (Def.'s Pretrial Br. 11–12). Under the TSUS, a "coated or filled" fabric was defined as a fabric that had been coated or filled "so as to *visibly and significantly affect the surface* . . . other than by change in color. . . ." [12] That definition changed under the HTSUS. The HTSUS states that "[f]abrics in which the impregnation, coating or covering *cannot be seen with the naked eye* . . ." are not to be classified as impregnated, coated or covered.[13] The HTSUS substituted straight "visibility" language in place of the "effects" language of the TSUS.

---

8. The magnification used will range between 4x to 10x.

9. The Court does not make any finding as to the correctness of Customs classification of exhibits Q & R.

10. The parties agreed that based on the evidence presented, it is more likely than not that the garments are impregnated.

11. *See United States v. Rosenthal Co.,* 67 CCPA 8, C.A.D. 1236, 609 F.2d 999 (1979).

12. Headnote 2(a) of TSUS schedule 3, part 4, Subpart C (emphasis added).

13. Note 5(a), Chapter 59, HTSUS.

Even under a strict visibility test, however, the Court finds that the impregnation on plaintiff's merchandise is visible to the naked eye. As noted above, the oilskin garments have both a waxy appearance and a sheen that is not visible on the untreated fabric. Given that the impregnating material is itself a visible waxy substance, and also informed by an Explanatory Note that expressly names the subject fabric "oilskins" as falling within the scope of heading 6210, the Court concludes that the waxy appearance and sheen are not merely effects of the impregnation, but visible attributes of the impregnation itself. Therefore, the impregnation is visible in the manner intended by heading 5907. In addition, the impregnation does more than waterproof the fabric because it gives the fabric an appearance of rugged durability. The plaintiff's proposed classification is therefore the correct classification for the garments. Consequently, judgment will be entered for the plaintiff.

## JUDGMENT

This matter having come before the court for decision; and the court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

**ORDERED, ADJUDGED and DECREED:** that the U.S. Customs service shall reliquidate the subject merchandise originally liquidated under subheadings 6202.12.2010, HTSUS (other women's raincoats); 6202.92.2061, HTSUS (other women's cotton anoraks (jackets), other than water resistant); and 6211.32.0070, HTSUS (men's cotton vests) under the respective subheadings 6210.30.2020, 6210.50.5020 and 6210.50.5055, HTSUS, and shall refund all excess duties with interest as provided by law within 60 days from the date this judgment becomes final.