**VEROSOL USA, INC., Plaintiff,**

·v.

**The UNITED STATES, Defendant.**

Slip Op. 96–167.
Court No. 92–10–00697.

United States Court of
International Trade.

Oct. 8, 1996.

Lamb & Lerch (David R. Ostheimer, Sidney H. Kuflik, of counsel), New York City, for plaintiff.

Frank W. Hunger, Assistant Attorney General, Washington, DC; Joseph. I. Liebman, Attorney in Charge, International Trade Field Office, New York City; Amy M. Rubin, Civil Division, Dept. of Justice, Commercial Litigation Branch, Attorneys for the Defendant; Chi S. Choy, New York City, Myron P. Barlow, Miami, FL, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, of counsel, for defendant.

## OPINION

POGUE, Judge:

In this designated test case, plaintiff, Verosol USA, Inc. ("Verosol"), an importer of metallized fabric, has invoked the court's jurisdiction under 28 U.S.C. § 1581(a) (1994), challenging the United States Customs Service ("Customs") classification of its metallized fabric as "woven fabric of synthetic filament yarn ... containing 85 percent or more by weight of non-textured polyester filaments ... other." The Court has jurisdiction and, for the following reasons, enters summary judgment for plaintiff.

### BACKGROUND

Plaintiff has imported metallized fabric from Holland for over 20 years. The fabric is used to produce energy efficient pleated shades. The imported fabric consists of woven polyester that has undergone a vacuum vapor-deposition process that coats one side of the fabric with aluminum. The coated side of the fabric is visibly different from the side which is not coated. The aluminum gives the fabric a metallic sheen or luster and a silvery color. The aluminum coating is

extremely fine, less than 10 microns thick; it neither fills the interstices of the fabric nor obscures the pattern or texture of the fabric. Instead, the reflectivity of the aluminum tends to emphasize the fabric's texture.

Under the Tariff Schedules of the United States ("TSUS"),[1] Customs classified the metallized fabric under 356.4000, TSUS, as a "coated or filled" woven fabric of man-made fibers with a rate of 8% *ad valorem*. Upon conversion to the HTSUS, Customs classified the metallized fabric under 5407.60.20, HTSUS, "woven fabrics of synthetic filament yarn ... containing 85 percent or more by weight of non-textured polyester filaments: ..." dutiable at a rate of 17% *ad valorem*. Plaintiff protested this classification, claiming that 5907.00.90, HTSUS (with a rate of 5.8% *ad valorem* ), applied because the coating on the textile fabric in question was visible to the naked eye. Heading 5907 applies to "Textile fabrics ... impregnated, coated or covered."

After initiation of this civil action, the Harmonized System Committee of the Customs Cooperation Council ("HSC") issued a ruling classifying the metallized fabric under 5907.00.90, HTSUS.[2] Defendant did not contest the HSC ruling,[3] which became final. HSC opinions are given the same weight as the international Explanatory Notes in interpreting HTSUS and are therefore instructive but not binding.[4]

### DISCUSSION

■ Rule 56 of this court permits summary judgment when "there is no genuine issue as to any material fact...." USCIT R. 56(d); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505,

---

1. The TSUS was replaced by the Harmonized Tariff Schedules of the United States (HTSUS) in 1989.

2. HCDCS Compendium of Classification Opinions (1995) at 20 E.

3. International Convention of the Harmonized Commodity Description and Coding System, Article 8(2).

4. The Explanatory Notes "provide a commentary on the scope of each heading of the Harmonized System and are thus useful in ascertaining the classification of merchandise under the system." H.R.Conf.Rep. No. 576, 100th Cong., 2d Sess. 549 (1988), *reprinted in* 1988 U.S.C.C.A.N. 1547, 1582. They do not constitute controlling legisla-

2510, 91 L.Ed.2d 202 (1986); *Glaverbel Société Anonyme v. Northlake Marketing & Supply, Inc.*, 45 F.3d 1550 (Fed.Cir.1995). In the present case, there is only a legal issue in controversy, the meaning of Note 5(a) to Chapter 59, HTSUS. Accordingly, summary judgment is appropriate.[5]

The question presented in this case is whether the metallized fabric at issue constitutes a "coated fabric" as that term is defined in 5907.00.90, HTSUS. Note 5(a) to Chapter 59, HTSUS says that Heading 5907 "does not apply to: (a) Fabrics in which the impregnation, coating or covering cannot be seen with the naked eye." The note also stipulates that "for the purpose of this provision, no account should be taken of any resulting change of color."

Both parties agree that aluminum adheres to one side of the metallized fabric and that the aluminum imparts a sheen to that side of the fabric. Furthermore, a comparison of treated and untreated samples of Verosol's fabric reveals several other visible effects of the coating process. Specifically, one side of the individual threads or fibers is obscured, so that an observer cannot see the polyester of the individual threads on that side. Also, the texture of the weave is emphasized by the reflectivity of the coating. In their stipulations of uncontested facts, neither party included recognition of these effects. However, at a hearing conducted by the Court

pursuant to Rule 56(e), the parties agreed that they exist. This dispute turns on the question of whether the sheen imparted by the metallization process, together with the attributes identified at the 56(e) hearing, render the aluminum coating visible to "the naked eye" under Note 5(a).

The defendant argues that sheen should not be a factor in determining visibility. According to the defendant's appearance expert, Richard W. Harold, the three attributes of color are lightness, hue and saturation. (Harold decl. at 2). In a book he co-authored, Mr. Harold distinguishes color from "geometric attributes," which include gloss, haze, and translucency. Richard S. Hunter & Richard W. Harold, *The Measurement of Appearance*, 75 (2d Ed., John Wiley & Sons (1987)). *The American Heritage Dictionary*, (3d Ed., Houghton Mifflin Comp., 1992) also defines "color" to mean "The appearance of objects ... described in terms of the individual's perception of them, involving hue, lightness, and saturation...."

However, Defendant contends that the drafters of Note 5(a) did not mean to limit the word "color" to its scientific elements, "but were including other phenomena that affect the perception of color." (Def.'s Reply to Pl.'s Resp. to Def.'s Cross–Motion for Summ.J. at 8.) According to Mr. Harold, "Sheen alters the way the human eye perceives color." (Harold · Decl. at 2). Therefore, the government argues, the

tive history but are intended to clarify the scope of the HTSUS and to offer guidance in interpreting its subheadings. *Mita Copystar America v. United States*, 21 F.3d 1079, 1082 (Fed.Cir.1994).

**5.** Where "there is no factual dispute between the parties, the presumption of correctness is not relevant." *Goodman Mfg., L.P. v. United States*, 69 F.3d 505, 508 (Fed.Cir.1995). *See also Marcor Dev. Corp. v. United States*, 926 F.Supp. 1124, 1128 (1996); *GKD–USA, Inc. v. United States*, 931 F.Supp. 875, 878 (1996); *Sharp Microelectronics Technology, Inc. v. United States*, 932 F.Supp. 1499, 1501 (1996); *Haggar Apparel Co. v. United States*, 938 F.Supp. 868 (1996). *But see Western States Import Co., Inc. v. United States*, 932 F.Supp. 1483 (1996); *Commercial Aluminum Cookware Co. v. United States*, 938 F.Supp. 875 (1996). The *Commercial Aluminum* court would apply the presumption of correctness to a case in which the only dispute is the interpreta-

tion of a tariff term. This would require a plaintiff to carry a *burden of proof* on the law. Were the *Commercial Aluminum* rule followed, the responsibility of the Court of International Trade to interpret tariff terms would be greatly curtailed; no longer determined *de novo* by the court, the meaning of tariff terms would instead depend on the quality of the advocacy of the litigant challenging Customs' interpretation. Such an approach would undermine the court's obligation to find "the correct result, by whatever procedure," *Jarvis Clark Co. v. United States*, 2 Fed.Cir. (T) 70, 75, 733 F.2d 873, 878 *reh'g denied*, 2 Fed.Cir. (T) 97, 739 F.2d 628 (1984); the court would be limited to the showing plaintiff made on its interpretation of the disputed tariff term. Such an approach would also introduce a great deal of uncertainty into Customs law as meanings potentially shifted from case to case based on the showing litigants made.

sheen imparted by the aluminum should be considered an aspect of color and should not be a factor in determining whether or not the aluminum is visible.

 "Tariff terms contained in the statutory language 'are to be construed in accordance with their common and popular meaning, in the absence of contrary legislative intent.'" *Lynteq, Inc. v. United States,* 10 Fed.Cir. (T) ——, 976 F.2d 693, 697 (1992) (citations omitted). In ascertaining common meaning, the court may rely on its own understanding of the term used, and may consult dictionaries, scientific authorities, and other reliable sources of information. *Brookside Veneers, Ltd. v. United States,* 6 Fed. Cir. (T) 121, 125, 847 F.2d 786, 789, *cert. denied,* 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988). Neither the scientific definition of color, provided by defendant's witness, nor the dictionary definition, includes sheen as an aspect of color. Furthermore, the government has provided no evidence for its assertion that the drafters of Note 5(a) meant to go beyond the common and scientific definitions of "color." [6] For these reasons, sheen cannot be considered an attribute of color for purposes of Note 5(a).

 In support of its position, the government cites this Court's order in *Foxfire, Inc. v. United States,* 941 F.Supp. 1258. In that case, the Court said, "that the presence of a sheen (intended as a bright or shining condition) on the fabric is not sufficient to establish whether any impregnation, coating or covering is visible to the naked eye within the meaning of Note 5(a) to Chapter 59 of the Harmonized Tariff Schedule of the United States." However, defendant is reading too much into that order. All the Court said in that case is that the presence of a sheen, without more, is not enough to prove that a fabric is coated. As the defendant points

out, "Sheen on a fabric is not always created by the addition of a foreign substance. Some fabrics are inherently shiny and some develop sheen due to a mechanical process...." (Def.'s Memo. in Opp. to Pl.'s Motion for Summ.J. and Support of Def.'s Cross–Motion for Summ.J. at 11, fn. 7). Therefore, although the order says that sheen alone is not enough to establish that a fabric is coated, sheen that is proven to be a direct result of a coating process may be a factor in determining if a coating is visible.

 Both parties have already acknowledged that the metallization process imparts a visible sheen to the subject fabric. The combination of this sheen, along with the obscuring of the individual fabric fibers, and the enhancement of the texture of the fabric's weave is enough to render the coating visible for purposes of Chapter 59. Therefore, Verosol's metallized fabric is coated according to the terms of Note 5(a) and should be classified under section 5907.00.90. Consequently, judgment will be entered for the plaintiff.

### JUDGMENT

This matter having come before the court for decision; and the court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

**ORDERED** that plaintiff's motion for summary judgment is granted; and it is further

**ORDERED** that defendant's cross-motion for summary judgment is denied; and it is further

**ORDERED** that the U.S. Customs service shall reliquidate the subject merchandise originally liquidated under subheading

---

**6.** The government contends that the drafters intentionally chose the human eye as the instrument to be used in determining whether a coating is visible under 5(a), because they meant "a change in color as perceived by the human eye and not merely a change in one of the three technical attributes of color." This argument is not convincing. Both Mr. Harold and the dictionary define color in terms of the perceptions of the observer. Therefore, when Mr. Harold states that color and sheen are different properties, he must mean that they are properties that may be distinguished by the human eye.

5407.60.20, HTSUS (woven fabrics of synthetic filament yarn ... containing 85 percent or more by weight of non-textured polyester filaments: ...), under the subheading 5907.00.90, HTSUS, and shall refund all excess duties with interest as provided by law within 60 days from the date this judgment becomes final.