**LONZA, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Slip Op. 97–36.**

**Court No. 91–08–00606.**

United States Court of International Trade.

March 27, 1997.

Galvin & Mlawski (John J. Galvin, Jack Mlawski, New York City), for Plaintiff.

Frank W. Hunger, Assistant Attorney General, Washington, DC; Joseph I. Liebman, Attorney–in–Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Bruce N. Stratvert, New York City); United States Customs Service (Edward N. Maurer, Spring Valley, NY), of counsel, for Defendant.

## OPINION

WALLACH, Judge.

## I

## INTRODUCTION

Plaintiff, Lonza, Incorporated ("Lonza"), challenges the classification of "Mono–4–Nitrobenzyl Malonate Magnesium Salt Dihydrate" ("imported salt"),[1] an inorganic salt of the organic acid ester of malonic acid, by the United States Customs Service ("Customs"). Both parties agree the imported merchandise was erroneously classified by Customs upon liquidation as "Acyclic Polycarboxylic Acids, their anhydrides, halides, peroxides, peroxyacids and their derivatives: other: products described in Additional U.S. Note 3 to Section VI" under Subheading 2917.19.20 of the Harmonized Tariff Schedule of the United States ("HTSUS").

Plaintiff claims that the merchandise is correctly classified as "Acyclic Polycarboxylic Acids, their anhydrides, halides, peroxides, peroxyacids and their derivatives: other: other: other:" under Subheading 2917.19.50,[2] HTSUS, at the rate of 4% *ad valorem.* In the alternative, Plaintiff agrees with Defendant's contention that the merchandise is properly classified as "Acyclic Polycarboxylic Acids, their anhydrides, halides, peroxides, peroxyacids and their derivatives: other: other: derived in whole or in part from aromatic hydrocarbons" under Subheading 2917.19.40, HTSUS, at the rate of 3.7¢/kg + 12.5%.

The entry at issue in this action was imported through the port of Newark, New Jersey on August 16, 1990. This Court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (1988).

■ The parties have submitted competing motions for summary judgment based on stipulated facts. The Court finds that by operation of Chapter Notes 5(a) and (c)(1) and Subheading Note 1 to Chapter 29, the phrase "derived in whole or in part from aromatic hydrocarbons", contained in 2917.19.40, HTSUS, does not apply only to the imported salt's chemical precursor. Rather, it applies to any portion of the imported salt derived from aromatic hydrocarbons. As a result, the Court grants the classification requested by both parties under Subheading 2917.19.40, HTSUS, and denies Plaintiff's alternative classification under Subheading 2917.19.50, HTSUS.

## II

## STATEMENT OF MATERIAL FACTS

The merchandise at issue is an inorganic salt of an organic acid ester, formed by the reaction of Propanedioic Acid, Mono [ (4–nitrophenyl) methyl] ester and Magnesium Ethoxide. Stip. at ¶ 5. The imported salt is a derivative of a polycarboxylic acid. Stip. at ¶ 4. The organic acid ester from which the imported salt is derived is Propanedioic Acid, Mono [ (4–nitrophenyl) methyl] ester and is an ester of Malonic Acid. Stip. at ¶ 10. This ester of Malonic Acid was formed by the reaction of Malonic Acid, Acetone and p-nitrobenzyl alcohol. Stip. at ¶ 9. If imported separately, these organic compounds would be properly classifiable under the following subheadings: for Malonic Acid, 2917.19.40 or 2917.19.50, HTSUS (depending on whether or not it was derived from aromatic hydrocarbons), Stip. at ¶ 15; for Acetone, 2914.11.10, HTSUS, Stip. at ¶ 14; and for p-nitrobenzyl alcohol, 2906.29.30, HTSUS. Stip. at ¶ 13.

Although the portion of the imported salt derived from malonic acid is not derived from aromatic hydrocarbons,[3] the portion of the

---

1. The parties agree that the imported merchandise was invoiced as "Mono–4–Nitrobenzyl Malonate Magnesium Salt Dihydrate". They also agree that it consists of Propanedioic Acid, Mono [ (4–nitrophenyl) methyl] ester, Magnesium Salt, CAS Registry No. 75321–09–4. Stipulation of Material Facts In Lieu Of Trial ("Stip.") at ¶ 1.

2. This Subheading was deleted from the HTSUS, effective on January 1, 1995, as a result of the Presidential Proclamation effecting the Uruguay

Round of the GATT, and Presidential Proclamation 6641 which implemented the North American Free Trade Agreement. Harmonized Tariff Schedule, Change Record (1995).

3. Additional U.S. Note 2(a) to Section VI of the HTSUS states: "[f]or the purposes of the tariff schedule ... [t]he term 'aromatic' as applied to any chemical compound refers to such compound containing one or more fused or unfused benzene rings."

imported salt derived from p-nitrobenzyl alcohol is derived from, and in fact contains, aromatic hydrocarbons. Stip. at p. 7. Consequently, the imported salt is an "aromatic" chemical compound as that term is defined in Additional U.S. Note 2(a) to Section VI of the HTSUS. Stip. at ¶ 3.

## III

## DISCUSSION

### A

### Summary Judgment May Be Granted Because There Is No Genuine Issue Of Material Fact

The Court may grant a motion for summary judgment if "... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(d). The Court may grant summary judgment only if it finds that no genuine issues of material fact exist. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). No genuine issues of material fact exist here, and summary judgment may be granted as a matter of law.

### B

### The Chapter And Subheading Notes Direct Classification of The Imported Salt Under The Heading Appropriate For The Malonic Acid Precursor And The Subheading Appropriate For The Salt As Imported

■ The issue in this case is one of statutory construction. The Court must determine whether Chapter Notes to a Heading which direct the classification of a chemical compound under the same Heading as that compound's chemical precursor also require classification of the chemical compound under the same Subheading as that compound's chemical precursor, or whether once the appropriate Heading is determined, the precursor may be superseded by the condition and character of the chemical compound as imported.

The parties dispute "whether the language of subheading 2917.19.40, HTSUS, *i.e.,* 'Derived in whole or in part from aromatic hydrocarbons', restricts classification in that subheading to compounds whose acid portion is so derived, or encompasses compounds any portion of which is derived from aromatic hydrocarbons." Stip. at p. 7. For the reasons that follow, the Court finds that this language applies where any portion of the compound is derived from aromatic hydrocarbons.

### 1

### The Imported Salt Is Properly Classifiable Under The Heading In Which Malonic Acid Is Classified

When considering the proper interpretation of a statute, it is wise to look first at its language.[4] *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). General Rule of Interpretation ("GRI") 1 to the HTSUS provides:

> Classification of goods in the tariff schedule shall be governed by the following principles: ... for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes....

The starting point for determining the proper classification of the imported salt, then, is examination of the appropriate Heading.

Heading 2917, HTSUS, provides for: "Polycarboxylic acids, their anhydrides, halides, peroxides and peroxyacids; their halogenated, sulfonated, nitrated or nitrosated derivatives". The imported merchandise is not any of the compounds listed in Heading 2917, *i.e.,* it is not itself "a polycarboxylic acid; an anhydride, halide, peroxide and/or a peroxyacid of a polycarboxylic acid; a halogenated, sulfonated, nitrated and/or nitrosated derivative of a polycarboxylic acid; or, a compound derivative, such as a sulphohalogenated, nitrohalogenated, nitrosulphonated or nitrosulfohalogenated derivative of a polycarboxylic acid." Stip. at ¶ 4. As a result, the imported salt may be properly classified under Head-

[4]. As Professor Stefan Riesenfeld once said, "Always read the statute. You may be surprised."

ing 2917, HTSUS, only by operation of the relevant Chapter Notes.

Chapter Note 5(c)(1) to Chapter 29 [5] provides:

> Inorganic salts of organic compounds such as acid-, phenol- or enol-function compounds or organic bases, of subchapters I to X or heading 2942, are to be classified in the heading appropriate to the organic compound....

The imported salt is an "inorganic salt of an organic compound" within the meaning of this Chapter Note. *See* Stip. at ¶ 6. Consequently, the Note directs classification of the imported salt in the "heading appropriate to the organic compound". Here, the organic acid ester Propanedioic Acid, Mono [ (4–nitrophenyl) methyl] ("Prop.Acid"), is the compound from which the salt was formed. *Id.* In order to determine the appropriate Heading for the organic acid ester, Chapter Note 5(a) must be applied. This Note states:

> The esters of acid-function organic compounds of subchapters I to VII with organic compounds of these subchapters are to be classified with that compound which is classified in the heading placed last in numerical order in these subchapters.

Chapter Note 5(a) to Chapter 29, HTSUS.

As stated above, the Prop. Acid ester was formed by the reaction of Malonic Acid, Acetone and p-nitrobenzyl alcohol. Stip. at ¶ 9. Among these compounds, the Malonic Acid precursor is classified last in numerical order. Thus, the imported salt is classifiable in the Heading appropriate to its Malonic Acid precursor. Malonic Acid is properly classifiable under Heading 2917 because it "is an acyclic polycarboxylic acid and an acid-function organic compound of subchapters I to VII, Chapter 29, HTSUS". Stip. at ¶ 15.

## 2

## The Imported Salt Is Not Properly Classifiable In The Subheading Applicable To The Malonic Acid Precursor

Plaintiff argues that the imported salt is properly classifiable under 2917.19.50, HTSUS, the Subheading applicable to the Malonic Acid precursor. Plaintiff reasons that the term "heading" found in the applicable Chapter Notes also applies to "subheading". If that reasoning is correct, the same steps explained above would mandate classification of the imported salt in the Subheading for Malonic Acid. Plaintiff also argues that because the Heading did not provide for "salts and esters", the subheadings may not provide for them because subheadings cannot expand the scope of headings. For the reasons that follow, Plaintiff's arguments fail.

### a

### The Term "Heading" In Chapter Notes 5(a) And 5(c)(1) Does Not Apply To The "Subheadings"

When determining the proper Subheading under which to classify a good, GRI 6 provides:

> For legal purposes, the classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related subheading notes and, *mutatis mutandis,* to the above rules, on the understanding that only subheadings at the same level are comparable. For the purposes of this rule, the relative section, chapter and subchapter notes also apply, unless the context otherwise requires.

Subheading Note 1 to Chapter 29 states:

> Within any one heading of this chapter, derivatives of a chemical compound (or group of chemical compounds) are to be classified within the same subheading as that compound (or group of compounds) provided that they are not more specifical-

5. Plaintiff argues that Chapter Note 5(c)(1) must be applied to the imported salt before Chapter Note 5(a), *see* Plaintiff's Mem. In Support Of Its Response To Defendant's Cross–Motion For Summary Judgment And Reply To Defendant's Response To Plaintiff's Motion For Summary Judgment at 6–7 ("Plaintiff's Response"), while Defendant applied Chapter Note 5(a) before Chapter Note 5(c)(1). Defendant's Mem. In Support Of Its Motion For Summary Judgment And In Opposition To Plaintiff's Motion For Summary Judgment at 5–6 ("Defendant's Mem."). At oral argument, held on January 29, 1997, counsel for the Defendant stated that the order in which the Chapter Notes were applied to the imported salt was irrelevant as the same classification resulted. In the Court's view, Chapter Note 5(c)(1) is the logical starting point for its analysis.

ly covered by any other subheading and that there is no residual subheading name *"Other"* in the series of subheadings concerned.

This Subheading Note, of course, applies to the subheadings under Heading 2917.

The Court finds that the Subheading Note directs classification of the imported salt under 2917.19.40, HTSUS, because a portion of the imported salt is "derived in whole or in part from aromatic hydrocarbons". Stip. at p. 7. The imported salt is also a derivative of Malonic Acid, a chemical compound. Stip. at ¶¶ 9, 17. According to the terms of the Subheading Note, however, the imported salt must be classified in the same subheading as the Malonic Acid only if there is no subheading which covers it more specifically or a residual subheading. Although the Malonic Acid itself is not derived in whole or in part from aromatic hydrocarbons, the portion of the imported merchandise derived from p-nitrobenzyl alcohol is derived from, *inter alia*, aromatic hydrocarbons. Stip. at p. 7. By application of GRI 6 and Subheading Note 1, then, the imported salt is properly classifiable in the Subheading where it is more specifically covered, *i.e.*, 2917.19.40, HTSUS, than in the Subheading which covers the compound of which it is a derivative, *i.e.*, 2917.19.50, HTSUS.

The Court rejects Plaintiff's argument that the language of Chapter Note 5(a) means that "once the particular compound last in numerical order is identified, Note 5(a) makes clear that the ester is 'to be classified with that compound' and that 'that com-

pound', Malonic Acid, is indisputably classifiable under the claimed provision." Mem. In Support Of Plaintiff's Motion For Summary Judgment at 11 ("Plaintiff's Mem.") (emphasis in original). In other words, Plaintiff is arguing that once the compound described by Note 5(a) is identified, the imported merchandise is classified as though it consisted solely of that compound, in this case, Malonic Acid.

Plaintiff bases its argument on the assertion that the term "headings" encompasses "subheadings". Indeed, General Note 7(f)[6] to the HTSUS provides:

> the term *"headings"* refers to the article descriptions and tariff provisions appearing in the schedule at the first hierarchical level; the term *"subheading"* refers to any article description or tariff provision indented thereunder; **a reference to** *"headings"* **encompasses subheadings indented thereunder.**

HTSUS General Note 7(f) (emphasis added). Plaintiff concludes that the reference in Chapter Note 5(a) to "heading" must encompass the indented subheadings, requiring classification of the imported compound according to its Malonic Acid precursor.[7] Plaintiff's Mem. at 12.

Subheading Note 1 to Chapter 29, HTSUS, however, is *prima facie* evidence that the term "Heading" in the Chapter Notes was not intended to apply to the "subheadings". Further, the terms of the Subheading Note apply directly to classification at the subheading level. Indeed, a reading of the term "heading" in Note 5(a) and (c)(1) as applying to "subheading" would contradict the actual terms of the Subheading Note.[8]

---

**6.** General Note 7 was redesignated as General Note 16. Proclamation No. 6641, Annex I, 58 Fed.Reg. 66867, 67032 (1993). Subsequently, General Note 16 was redesignated as General Note 19. Harmonized Tariff Schedule, Change Record (1995). Both parties cite to this provision as General Note 19(f). However, the Court cites to it as General Note 7(f) because that is how the provision appeared in the 1990 version of the HTSUS when the imported salt entered the United States.

**7.** Defendant argued in response that "had the drafters of the statute meant, by the use of the term 'heading' in these notes, instead the term 'subheading,' they undoubtedly would have used

the term 'subheading.'" Defendant's Mem. at 7. Defendant also argued that Plaintiff's reliance on General Note 7(f) is misplaced because that Note refers to "headings" and not "heading" as at issue here. *Id.*

As correctly pointed out by Plaintiff in its reply, Congress has stated that when interpreting a statute "unless the context indicates otherwise, words importing the singular include and apply to several persons, parties or things; words importing the plural include the singular." Plaintiff's Response at 10–11, *quoting* 1 U.S.C. § 1 (1988).

**8.** As discussed previously, the terms of the Headings direct classification of the imported salt in

Plaintiff also argues that Subheading Note 1 philosophically comports with the Chapter Notes, which direct classification under the provision for the chemical precursor. As a result, Plaintiff claims that Subheading Note 1 directs the classification of the imported product according to how the imported product was produced. According to Plaintiff, then, the imported salt is to be classified according to those chemicals used in its production, *i.e.*, Malonic Acid, Acetone, and p-nitrobenzyl alcohol.[9]

Subheading Note 1 would be surplusage if Plaintiff's interpretation of it was accurate. If Congress intended for the derivative of a compound to be automatically classified with that compound, the Subheading Note would be superfluous. If not for Subheading Note 1, the terms of the Chapter Notes would direct the classification of the product under the subheadings by operation of General Note 7(f). As a result, the derivative chemical would be classified in the subheading that most specifically covered the precursor compound. In order, as we must, to give effect to all the words in the statute, *see United States v. Esso Standard Oil Co.*, 42 C.C.P.A. 144, 151, 1955 WL 6827 (1955) ("The primary rule for the construction of tariff statutes is to determine the congressional intent. The first source for the determination of this intent is the language itself . . ."), Subheading Note 1 must be read so as to direct the classification of the salt under the subheading that most specifically describes the salt. Thus, Plaintiff's arguments fail.

### b

### The Chapter Notes Expand The Terms Of Heading 2917 By Operation Of Law To Encompass The Imported Salt

The Court rejects Plaintiff's argument that the Chapter Notes "do not expand, change,

modify or in any way affect the language contained in the provisions of Chapter 29", Plaintiff's Response at 3, but "plainly and unequivocally direct that classification is to be based on the organic compound from which the imported articles is formed." *Id.* Plaintiff bases its argument on the proposition that the six digit Subheading cannot be expanded beyond the four digit Heading which does not provide for the salt or ester. As a result, Plaintiff claims that the language "derived in whole or in part from aromatic hydrocarbons" is limited by the six digit subheading and four digit heading and thus is referring to the compounds provided for in Heading 2917, and that accordingly, only if Malonic Acid itself is derived from aromatic hydrocarbons may it be classified under 2917.19.40, HTSUS.

Plaintiff is correct in its assertion that the imported salt is classifiable in Heading 2917 by operation of the relevant Chapter Notes. These Notes expand the scope of the Heading so as to provide for the salts and esters as if specifically named in the Heading. Because the relevant Chapter Notes direct that the imported merchandise is classifiable within Heading 2917, HTSUS, by law the "salts and esters" are described for tariff purposes within Heading 2917, HTSUS.

Support for this interpretation may be found within the subheadings under Heading 2917, HTSUS. They reveal that salts and esters are provided for *eo nomine* in some instances. For example, 2917.11, HTSUS, provides for "Oxalic acid, its salts and esters" and 2917.12, HTSUS, provides for "Adipic acid, its salts and esters". Heading 2917 must encompass salts and esters in order to give effect to the *eo nomine* provisions.[10]

the Heading appropriate for the organic acid ester. The contradiction is that the terms of the Subheading Note direct classification under the provision that more specifically covers the imported salt or into a residual "other" subheading, when possible, which is not provided for under the terms of the Headings.

**9.** Defendant compares the HTSUS and the Tariff Schedules of the United States ("TSUS"), arguing the continuity between the two classification schedules with regard to the subject merchandise. Defendant's Mem. at 12–14. Plaintiff re-

sponded to this argument in its Post–Hearing Mem. In Support Of Plaintiff's Motion For Summary Judgment. As the Court has found that the terms of the HTSUS direct classification of the imported salt, we do not need to examine the TSUS *to assist in classifying the merchandise.*

**10.** Plaintiff stated that any time the terms of the subheadings contradict the Chapter Notes, the terms of the subheadings control as directed by GRI 6. This response does not explain how "salts and esters" can have specific call-outs in the text of the subheadings under Heading 2917 if Heading 2917 does not encompass "salts and esters".

According to the *Explanatory Notes to the Harmonized Commodity Description and Coding System* ("*Explanatory Notes* "),[11] methyl benzenesulfonate, the methyl ester of benzenesulfonic acid, is an ester formed by the reaction of benzenesulfonic acid with methyl alcohol. *Explanatory Notes*, p. 329 (1986 ed.). The *Explanatory Notes* state that benzenesulfonic acid is classifiable in Heading 2904 which covers "[s]ulfonated, nitrated or nitrosated derivatives of hydrocarbons, whether or not halogenated". *Id.* Methyl alcohol, according to the *Explanatory Notes*, is classifiable in Heading 2905 which covers "[a]cyclic alcohols and their halogenated, sulfonated, nitrated or nitrosated derivatives". *Id.* The *Explanatory Notes* state that methyl benzenesulfonate is properly classifiable in Heading 2905. *Id.*

In its Supplemental Memorandum in response to a request from the Court for examples of compounds excluded from coverage in particular Headings of Chapter 29 by the absence of "salts and esters" language, Defendant provided a Declaration from Thomas F. Governo, Chief of Technical Operations for the Chemicals Unit of the New York Customs Laboratory. Defendant's Supplemental Mem. Exh. A ("Declaration").

Governo's Declaration demonstrates that if Heading 2904 covered "sulfonated . . . derivatives of hydrocarbons . . . and their salts and esters", the methyl benzenesulfonate would be described by Heading 2904 instead of Heading 2905, as directed by the *Explanatory Notes*. Declaration at ¶ 2. Because benzenesulfonic acid is a sulfonated derivative of the hydrocarbon, benzene, without the language "and their salts and esters", esters of sulfonic acid derivatives of hydrocarbons esterified with alcohols of Heading 2905 are excluded from Heading 2904. *Id.* This example provides additional evidentiary support for the reasoning set forth above.

11. The *Explanatory Notes* are the official interpretation of the scope of the Harmonized Commodity Description and Coding System (which served as the basis of the HTSUS) as viewed by the Customs Cooperation Council, the international organization that drafted that international nomenclature. The *Explanatory Notes* "do not constitute controlling legislative history," nevertheless, they "are intended to clarify the scope of HTSUS subheadings and to offer guidance in interpreting subheadings." *Mita Copystar Amer. v. United States,* 21 F.3d 1079, 1082 (Fed.Cir. 1994).

## IV

## CONCLUSION

For the foregoing reasons, the Court enters a final judgment denying classification under Subheading 2917.19.50, HTSUS, and granting classification under Subheading 2917.19.40, HTSUS.

### JUDGMENT ORDER

This case having come before the Court for decision, and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

ORDERED, ADJUDGED AND DECREED that Plaintiff's motion for summary judgment to classify the Mono-4-Nitrobenzyl Malonate Magnesium Salt Dihydrate under subheading 2917.19.50, HTSUS, be, and hereby is, denied; and it is further

ORDERED, ADJUDGED AND DECREED that Plaintiff's motion for summary judgment to classify the Mono-4-Nitrobenzyl Malonate Magnesium Salt Dihydrate under subheading 2917.19.40, HTSUS, be, and hereby is, granted; and it is further

ORDERED, ADJUDGED AND DECREED that Defendant's motion for summary judgment to classify the Mono-4-Nitrobenzyl Malonate Magnesium Salt Dihydrate under subheading 2917.19.40, HTSUS, be, and hereby is, granted; and it is further

ORDERED, ADJUDGED AND DECREED that Customs' classification of the Mono-4-Nitrobenzyl Malonate Magnesium Salt Dihydrate under subheading 2917.19.20, HTSUS, be set aside; and it is further

ORDERED, ADJUDGED AND DECREED that Customs' reclassify the Mono-4-Nitrobenzyl Malonate Magnesium Salt Dihydrate under Heading 2917.19.40, HTSUS, at the rate of 3.7¢/kg + 12.5%. Customs shall

refund all excess duties paid with interest as provided by law; and it is further

ORDERED, ADJUDGED AND DECREED that each party shall bear its own costs; and it is further

ORDERED, ADJUDGED AND DECREED that the classification sought by both parties under subheading 2917.19.40, HTSUS, having been granted, this action shall be dismissed.