**SHARP MICROELECTRONICS TECHNOLOGY, INC.,**
Plaintiff–Appellant,

v.

**The UNITED STATES, Defendant–Appellee.**

No. 97–1013.

United States Court of Appeals, Federal Circuit.

Decided Sept. 2, 1997.

---

Fusae Nara, Donovan Leisure Newton & Irvine, New York City, argued for Plaintiff–Appellant. With him on the brief were Peter J. Gartland and David S. Versfelt.

Amy M. Rubin, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, International Trade Field Office, New York City, argued for Defendant–Appellee. With her on the brief were Frank W. Hunger, Assistant Attorney General, and David M. Cohen, Director, Department of Justice, Washington, DC, and Joseph I. Liebman, Attorney in Charge, and Chi S. Choy, International Trade Field Office, New York City.

Before CLEVENGER, RADER, and BRYSON, Circuit Judges.

CLEVENGER, Circuit Judge.

Sharp Microelectronics Technology, Inc. (Sharp) appeals from the judgment of the Court of International Trade upholding the classification by the United States Customs Service (Customs) of Sharp's imported glass cells as "[l]iquid crystal devices not constituting articles provided for more specifically in other headings ... Other devices ... Other," under the Harmonized Tariff Schedule of the United States (HTSUS), subheading 9013.80.60. *Sharp Microelectronics Tech., Inc. v. United States*, 932 F.Supp. 1499 (Ct Int'l Trade 1996). Exercising our jurisdiction under 28 U.S.C. § 1295(a)(5) (1994), we affirm.

I

The imported glass cells at issue in this case consist of two pieces of processed glass with a layer of liquid crystal material injected between them. Together, the materials are referred to as "display glass," which displays text and graphics created from coded signals received by the display glass from the central processing unit of an automatic data processing machine. The parties have stipulated that the only use for the imported items is as parts for the display screens of computers.

Subheading 9013.80.60 of the HTSUS reads in relevant part:

| 9013 | Liquid crystal devices not constituting articles provided for more specifically in other headings; |
| --- | --- |
| | ...: |
| 9013.80 | Other devices, appliances and instruments: |
| 9013.80.60 | Other. |

The duty attached to such articles is 9 percent.

The Explanatory Note to heading 9013 provides in relevant part:

This heading includes:

(1) Liquid crystal devices consisting of a liquid crystal layer sandwiched between two sheets or plates of glass or plastics, whether or not fitted with electrical connections, presented in the piece or cut to special shapes and not constituting articles described more specifically in other headings of the Nomenclature. . . .

When Customs classified Sharp's display glass under subheading 9013.80.60, Sharp disagreed, arguing that the subject entries should instead be classified under subheading 8473.30.40 (parts and accessories of machines of automatic data processing machines), or subheading 8471.92.30 (input or output display units of automatic data processing machines), or subheading 8531.20.00 (indicator panels incorporating liquid crystal devices). After the contested entries were liquidated pursuant to Customs' classification, Sharp filed a timely protest. Upon Customs' denial of the protest, Sharp brought suit in the Court of International Trade.

## II

On stipulated facts, the parties filed cross motions for summary judgment in the Court of International Trade. Sharp did not pursue its contention that the display glass should be classified under subheading 8531.20.00, and it does not appeal from the judgment that the display glass cannot be classified under subheading 8471.92.30. Consequently, we will visit the decision of the Court of International Trade only insofar as it relates to Sharp's contention that the display glass must be classified under subheading 8473.30.40 and to Customs' stance that the proper classification provision is subheading 9013.80.60.

Because Sharp's display glass fits the description of liquid crystal devices contained in heading 9013 and the Explanatory Note thereto, the Court of International Trade proceeded to determine whether the articles in question are "provided for more specifically in other headings," that being the relevant question posed on the face of heading 9013.

Since the alternative subheading proposed by Sharp is a parts provision, the Court of International Trade first considered whether the display glass falls within the terms of subheading 8473.30.40, which provides in relevant part:

| 8473.30 | Parts and accessories of the machines of heading 8471 [automatic data processing machines]: |
|---|---|
| 8473.30.40 | Not incorporating a cathode ray tube |

After concluding that the display glass is an integral component of a finished automatic data processing machine without which it would not operate as intended, and that the use of Sharp's display glass at, or immediately before, the date of importation is solely or principally for use in automatic data processing machines, the Court of International Trade decided that Sharp's display glass can be described as a part of an automatic data processing machine. The government does not challenge that particular decision.

Next, the Court of International Trade considered whether Sharp's display glass is provided for more specifically in the parts provision than it is in the liquid crystal devices provision. For two reasons, the Court of International Trade concluded that the parts provision does not more specifically describe Sharp's display glass.

First, the Court of International Trade resorted to Note 1(m) of Section XVI of the HTSUS, which provides that "[t]his section [which includes chapter 84 and thus subheading 8473.30.40] does not cover . . . Articles of Chapter 90 [including subheading 9013.80.60]." Note 1(m) thus states a rule of interpretation that articles which are described in Chapter 90 cannot be classified in Chapter 84. Having concluded previously that Sharp's display could be classified either as a liquid crystal device or as a part of an automatic data processing machine—the choice dependent only on whether the parts provision more specifically describes the articles—the court read Note 1(m) to deflect Sharp's display glass from the embrace of the parts provision. In essence, the court deemed Note 1(m) to preclude more specific provision for the display glass in the parts subheading.

Second, the court concluded that even if Note 1(m) does not answer the question of whether the parts provision is more specific than the liquid crystal device provision, the same result would obtain in a straightforward relative specificity analysis mandated by the terms of heading 9013. To perform that analysis, the court stated that it must look to the provision with "requirements which are more difficult to satisfy and which describe the article with the greatest degree of accuracy and certainty," citing *Amersham Corp. v. United States,* 564 F.Supp. 813, 824 (Ct. Int'l Trade 1983). The court also noted "in passing" that the relative specificity analysis it was undertaking was mandated by heading 9013 ("not ... provided for more specifically in other headings") and General Rules of Interpretation (GRI) 1 of the HTSUS and not by GRI 3(a) ("The heading which provides the most specific description shall be preferred to headings providing a more general description."). Finally, in order to complete its relative specificity analysis, the court referred to Additional U.S. Rule of Interpretation 1(c), which provides that "a provision for 'parts' or 'parts and accessories' shall not prevail over a specific provision for such part or accessory."

With those interpretative tools in hand, the court concluded that Sharp's display glass, except for the relative specificity consideration, is precisely described by heading 9013 and the Explanatory Note thereto, thus satisfying the accuracy and certainty tests. Turning to the parts provision, the court concluded that it is less difficult to satisfy because it is "easier to be classified as a part or accessory of any of the machines enumerated above than it is to be a liquid crystal device." 932 F.Supp. at 1507. In response to Sharp's argument that, as a general proposition, a parts provision will prevail over a basket provision, the court invoked Rule 1(c), noting that even if subheading 9013.80.60 were treated as a basket provision, it nonetheless more specifically describes the display glass than the parts provision, and hence displaces the general rule that a parts provision will prevail over a basket provision. *Id.* at 1507–08 n. 7.

## III

We review the trial court's grant of summary judgment for correctness as a matter of law. *See Mita Copystar America v. United States,* 21 F.3d 1079, 1082 (Fed.Cir. 1994). Because the central issue here concerns the legal scope of the pertinent classification terms, and because such issue is a question of law, we review the issue *de novo. See Universal Elecs. Inc. v. United States,* 112 F.3d 488, 493 (Fed.Cir.1997) ("On questions of law, we defer to neither Customs' nor the Court of International Trade's interpretations; we decide such questions afresh."); *Rollerblade, Inc. v. United States,* 112 F.3d 481, 484 (Fed.Cir.1997) ("[N]o deference attaches to Customs' classification decisions ... where there are no disputed issues of material fact.").

Sharp has timely appealed the judgment of the Court of International Trade. Sharp contends that the Court of International Trade erred in three regards. First, it argues that heading 9013 is a genuine basket provision, and that under traditional rules of interpretation in classification cases, a parts provision must prevail over a basket provision, when the articles in question are described by both provisions. Second, Sharp faults the relative specificity analysis conducted by the Court of International Trade. On the second point, we perceive two lines of criticism. First, Sharp argues that the court misapplied Note 1(m) in conducting its relative specificity analysis. Second, Sharp thinks the court compared the wrong headings while conducting its analysis, and thereby erred in finding heading 9013 more specific, with regard to the articles in question, than heading 8473. Sharp's third ground of error resorts to the history of heading 9013, and concludes that the heading cannot cover a liquid crystal device which is destined for use in a computer screen. To these matters we now turn.

## A

The government acknowledges that under customs practice before the HTSUS, a gen-

eral rule provided that parts provisions prevail over basket provisions. *See, e.g., Ideal Toy Corp. v. United States,* 58 C.C.P.A. 9, 433 F.2d 801, 803–04 (CCPA 1970). Further, the government contends that items under the previous Tariff Schedules of the United States (TSUS) were characterized as "baskets" when they employed the terms "not specially provided for" or described in a sweeping manner several categories of merchandise (such as "on-farm equipment for the handling or drying of agricultural or horticultural products"—item 666.00, TSUS). The government also acknowledges that "basket" provisions abound in the HTSUS, even when using language differing from that which was customary under the TSUS. For example, the government cites as HTSUS "baskets": "other" threaded articles in subheading 7318.19.00, "other" food preparations in subheading 2106.90.60, and "machines and mechanical appliances having individual functions, not specified or included elsewhere in this chapter" in heading 8479. The government notes that heading 8479 was described in passing as a "basket" in our opinion in *Hemscheidt Corp. v. United States,* 72 F.3d 868, 869 (Fed.Cir.1995), even though whether the provision is indeed a basket was not an issue *sub judice.*

In this case, we need not decide whether or where one might find a basket provision in the HTSUS, or whether the previous general rule that parts provisions prevail over basket provisions will acquire such status after case-by-case application under the HTSUS. Those matters, while important, are beyond our reach in this case, because we conclude that heading 9013 is not a basket provision. We reach that conclusion not so much because heading 9013 uses "specifically" instead of "specially," as the TSUS did, but more so because heading 9013 itself invites a relative specificity analysis whenever an article is susceptible of description under heading 9013 and another heading or subheading. Heading 9013 thus provides a specific home, not a basket, for defined articles, indeed for the very liquid crystal devices imported by Sharp. The provision then acknowledges

that the same article specifically defined therein might be found with an even more specifically described home elsewhere in the schedule. We therefore decline Sharp's invitation to treat such a provision as a basket; it instead is simply another specific provision acknowledging that it may be more or less difficult to satisfy than some other provision, or a more or less accurate or certain provision than some other to describe a particular article.

Because we conclude that heading 9013 is not a "basket" over which a parts provision might prevail, we reject Sharp's initial attack on the decision of the Court of International Trade.

### B

With regard to the relative specificity analysis conducted by the Court of International Trade, Sharp first disagrees with the court's employment of Note 1(m). On this point, Sharp prevails. As we noted above, the Court of International Trade in essence used Note 1(m) as a "tie-breaker" in concluding that subheading 9013.80.60 is more specific than the parts provision in subheading 8473.30.40. Sharp argues that such use of Note 1(m) means that whenever an article could fit under Chapter 90 or Chapter 84, Chapter 90 would prevail, even if the heading or subheading under Chapter 90 also included an article that is more specifically provided for in Chapter 84, and the particular article in dispute unquestionably is more specifically provided for under Chapter 84. Sharp's argument illustrates the error in employing Note 1(m) as an analytical tool before one first decides if an article is classifiable under heading 9013. If one determines that a liquid crystal device belongs in heading 9013 because it is not more specifically captured elsewhere in the schedule, then Note 1(m) complements the rule of relative specificity by excluding the device from classification in Chapter 84. If Note 1(m) instead supplies the answer to the relative specificity analysis, as the Court of International Trade held, and as the government urges us to

hold, then the need for a meaningful specificity analysis vanishes. We prefer the complementary role which we assign to Note 1(m) in the setting of this case.

As its second line of attack on the court's relative specificity analysis, Sharp contends in its opening brief that the court mixed apples and oranges, so to speak, in conducting its analysis. Sharp faults the court for having compared heading 9013 (liquid crystal devices) with heading 8473 (parts and accessories for use with machines of headings 8469 to 8471) in determining that heading 8473, by providing home for so many disparate parts, is less specific than the precise liquid crystal device provision found in heading 9013. In reply, the government notes that Sharp's purported support for its complaint is misplaced, in that Sharp only relied on a definitional provision which provides that a "reference to 'headings' encompasses subheadings indented thereunder." Sharp could point to no rule of interpretation faulting the court's comparison of heading to heading. Instead, Sharp has receded in this argument, stating in its reply brief that "[c]ontrary to the Government's description, SMT [Sharp] does not contend that the CIT 'should have compared the four digit heading 9013 with the six digit subheading 8473.30' " We thus reject Sharp's challenge to the trial court's relative specificity analysis which concluded that the parts provision is less specific than heading 9013.

### C

Sharp asks us to refer to the history of the current HTSUS heading 9013 provision, a subject described at some length in the opinion of the Court of International Trade. *See* 932 F.Supp. at 1502–03. In brief, when Congress adopted the HTSUS through the enactment of the Omnibus Trade and Competitiveness Act of 1988, it did not comment on the scope of heading 9013. *See* Pub.L. No. 100–418, §§ 1201, 1204, 102 Stat. 1107, 1147–50 (1988). For the history of the HTSUS, however, we have the record of the workings of the Nomenclature Committee and the Harmonized System Committee of the Customs Cooperation Council. Among the papers of those committees are found the origins of heading 9013, and various proposals for its language and purpose.

Heading 9013 in the beginning did not contain any reference to liquid crystal devices. Focus on liquid crystal displays occurred in 1979 during discussions on how to classify such displays used with electric clocks and watches, which were equally susceptible to classification under contemplated chapters 85 and 90. As the Court of International Trade explained in its opinion, the Committee determined that liquid crystal displays should be classified as much as possible under a single heading, while leaving finished articles incorporating such displays in their particular appropriate headings. Thus, the overall emerging design for heading 9013 would exclude therefrom finished articles using the properties of liquid crystals, when expressly covered in another provision, and include indeterminate or general use liquid crystal devices. In one of the Committee documents, discussing the idea of leaving finished articles in their appropriate headings, the idea was expressed that "[t]he same applies to parts identifiable as being specially designed for a specific machine or apparatus."

From this history, Sharp argues that heading 9013 only provides a home for liquid crystal devices of indeterminate or general use, and that such devices, when identifiable as parts for a specific machine, cannot be classified under heading 9013. Sharp bolsters this argument by reference to the holding of the Court of International Trade, made during its consideration of whether Sharp's display glass qualifies as a part under heading 8473, that Sharp's display glass is indeed a part for a specific use, namely for a machine described in heading 8473. That particular holding, Sharp maintains, must mean that its imported display glass cannot be a liquid crystal device of indeterminate or general use. To state Sharp's argument reveals a measure of appeal, but we must reject it, for several reasons.

First, the history on which Sharp relies, in particular memorandum of Committee ses-

sions, precedes Congressional consideration of what became heading 9013. That history, while interesting and informative, is not binding on the courts, and in the end is overwhelmed by the specific language of heading 9013, which fails to accommodate the fine points Sharp draws from the history. *Cf. Lonza, Inc. v. United States,* 960 F.Supp. 374, 380 n. 11 (Ct. Int'l Trade 1997) (Although the Explanatory Notes are the official interpretation of the scope of the Harmonized Commodity Description and Coding System (which served as the basis of the HTSUS) as viewed by the Customs Cooperation Council, the international organization that drafted that nomenclature, the Explanatory Notes do not constitute controlling legislative history.). Heading 9013 and its Explanatory Note instead create a heading that embraces Sharp's display glass, so long as it is not described more specifically in other headings. The terms of heading 9013 require a relative specificity analysis for squaring heading 9013 with other headings, and GRI 1 mandates that "classification shall be determined according to the terms of the headings...." Additional U.S. Rule of Interpretation 1(c) further provides a tool to assist in finding the correct classification home for articles, such as those in issue, for which two headings compete. We thus can identify a symmetry in the HTSUS which accommodates heading 9013 and the interpretative guides of the HTSUS, and which provides a reasonable answer to the classification question posed in this case. We think that symmetry is dislodged and its components discounted too much by Sharp's history argument, which we decline to credit in the dispositive fashion urged by Sharp.

### IV

In conclusion, we hold that the Court of International Trade correctly determined that the articles in question are to be classified under subheading 9013.80.60. The decision of that court is therefore affirmed.

No costs.

*AFFIRMED.*